IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Edwin MATOS NUNEZ,<br><br>    Petitioner,<br><br>v.<br><br>J.L. JAMISON, et al.,<br><br>    Respondents. | CIVIL ACTION<br>NO. 25-7347 |

**ORDER**

**AND NOW**, this 3rd day of March 2026, upon consideration of Petitioner Jose Antonio Mourao's Petition for Writ of Habeas Corpus (Doc. No. 1), Petitioner's Motion for a Temporary Restraining Order (Doc. No. 2), Respondents' Response in Opposition to Petitioner's Habeas Petition (Doc. No. 3), and Petitioner's Reply to Respondents' Response in Opposition (Doc. No. 4), it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED** and Petitioner's Motion for a Temporary Restraining Order (Doc. No. 2) is **DENIED as moot**.[1]  It is **FURTHER ORDERED** as follows:

---

[1] Petitioner Edwin Matos Nunez ("Petitioner") is a citizen of Venezuela who entered the United States at the San Ysidro Border Crossing on December 4, 2023. (Doc. No. 1 at 2; Doc. No. 3 at 2.) After "a brief period of detention," Petitioner was released on parole under 8 U.S.C. § 1182(d)(5) until April 18, 2025. (Doc. No. 1 at 8; Doc. No. 3 at 2.) On that date, his parole expired. On December 22, 2025, Petitioner was arrested by United States Immigration and Customs Enforcement ("ICE") agents. (Doc. No. 1 at 9.) Petitioner is detained at the Federal Detention Center ("FDC") in Philadelphia. (Id.; Doc. No. 3 at 3.)

On December 28, 2025, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. No. 1), which is now before the Court. In that Petition, he asks the Court to order his release and to require Respondents to provide him with a bond hearing. (Doc. No. 1 at 15.) Later that day, Petitioner filed a Motion for a Temporary Restraining Order ("TRO"), again requesting the Court to order his immediate release. (Doc. No. 2.) On January 2, 2026, Respondents filed a Brief in Opposition to Petitioner's Habeas Petition. (Doc. No. 3.) On February 17, 2026, Petitioner filed a Reply to Respondents' Opposition Brief. (Doc. No. 5). The Petition is now ripe for disposition.

1

In his Petition, Petitioner submits that Respondents are detaining him in violation of 8 U.S.C. § 1226(a), its corresponding regulations, the Due Process Clause of the Fifth Amendment, and the Administrative Procedures Act. (Doc. No. 1 at 9–14.)  Respondents first counter this submission with a series of jurisdictional defenses, claiming that district courts cannot hear cases like Petitioner's.  (See Doc. No. 3 at 4–8) (arguing that 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a)(2)(B)(ii) divest district courts of jurisdiction to hear habeas petitions related to removal proceedings).  Second, Respondents contend that Petitioner's detention does not violate the Due Process Clause because 8 U.S.C. § 1225(b)(2) requires mandatory detention for applicants for admission to the United States.  (See Doc. No. 3 at 12–13.)  However, since (1) Petitioner's Due Process claims are predicated on his statutory claims, and (2) his detention has only lasted for a short duration, the Court will shortly focus its analysis on Petitioner's statutory claims.  See Kashranov v. Jamison, No. 25-cv-5555, 2025 WL 3188399, at *5 (highlighting that "if Section 1226 governs, then [petitioner] has due process rights…").

Third, Respondents assert that their authority to detain Petitioner stems not from 8 U.S.C. § 1226(a), but instead from 8 U.S.C. § 1225(b)(2).  (Doc. No. 3 at 8–12.)  That distinction matters because Section 1226(a) provides procedural protections for detainees—protections that Section 1225(b)(2) lacks.  See 8 C.F.R. § 1236.1(d), (c)(8) (providing those detained under Section 1226(a) with individualized custody determinations, bond hearings, and rights of appeal); see also Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").  If, instead, Respondents are correct that Section 1225(b)(2) applies to Petitioner, then Petitioner's continued detention is not only mandatory, but Petitioner's request for a bond hearing is baseless.

The Court previously addressed some of Respondents' contentions in Nogueira-Mendes v. McShane, No. CV 25-5810, 2025 WL 3473364, at *1–3 (E.D. Pa. Dec. 3, 2025).  The Court will adopt the reasoning outlined in that prior case on the issues that arise in this case. Consequently, here, the Court finds as follows: (1) the Court has jurisdiction to hear Petitioner's case, and (2) Section 1226(a) governs the detention of those who already lived in the country for some time—as opposed to those detained soon after crossing the border. While the Court has considered the Fifth's Circuit's contrary interpretation of the dueling INA provisions in Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), the Court finds no reason to depart from its prior findings in Nogueira-Mendes or the chorus of unanimous rulings from Judges in this District.  See Vimos v. Federal Detention Center Philadelphia, No. CV 26-780, 2026 WL 381173, at *n.12 (E.D. Pa. Feb. 11, 2026) (rejecting the Fifth's Circuit holding in Buenrostro-Mendez); De Andrade v. Rose, No. 26-603, 2026 WL 401189, at *5 (E.D. Pa. Feb. 12, 2026) (same).

Nevertheless, Respondents assert that this Court's prior holdings do not apply to the instant case.  Petitioner's case is different, Respondents urge, because he was initially detained at the border and then released on parole, which has since expired. (Doc. No. 3 at 1 n.1, 11–12). Specifically, Petitioner was detained in December 2023 under Section 1225(b)(2) but paroled under 8 U.S.C. § 1182(d)(5)(A) ("Section 1182").  That latter provision allows for temporary

parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." 8 U.S.C. § 1182(d)(5)(A).  But when that parole expires, Section 1182 provides that "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Id.  Because Petitioner was detained under Section 1225(b)(2) before he was given parole, Respondents argue that—once his parole expired—his status reverted to detention under Section 1225(b)(2).  (Doc. No. 3 at 11–12.)

In Petitioner's Reply Brief, he argues that Section 1225(b)(2) only applies to individuals "seeking admission" at the border, so "resurrect[ing] mandatory detention years later, far from the border," would be contrary to statutory language.  (Id.)  The Court agrees.

The Court acknowledges there is a split among district courts who have decided this issue.  See Ivonin v. Rhoney, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *3–5 (W.D.N.Y. Jan. 26, 2026) (collecting cases and ruling in favor of a habeas petitioner).  However, Judges within this District who have examined this question have all ruled against Respondents' interpretation.  See, e.g. Francois v. Noem, No. CV 25-7334, 2026 WL 27565, at *3 (E.D. Pa. Jan. 5, 2026) ("Courts around the country have also found noncitizens who were paroled under § 1182(d)(5) are not subject to mandatory detention if they have been residing within the country for years . . . . The fact Francois had [Temporary Protected Status] which then expired also does not impact his petition."); Sharapov v. O'Neill, No. CV 26-38, 2026 WL 146668 (E.D. Pa. Jan. 20, 2026) ("The court finds [the fact petitioner was paroled] does not impact his right to habeas relief.")

This Court has previously determined that petitioners who live in the United States for significant periods of time before detention were not "seeking admission" as that phrase is used under Section 1225(b)(2), so Section 1226(a) was applicable in those cases.  See, e.g. Lacayo Garcia v. Rose, Civ. No. 26-808, (Doc. No. 4 at n.1).  Therefore, because Petitioner has been in the United States for over two years, "the default rule in Section 1226(a) governs his detention."  Nogueira-Mendes, 2025 WL 3473364, at *4.

Two additional reasons caution against adopting Respondent's position.  First, Respondents emphasize one portion of Section 1182 at the cost of downplaying the rest of it.  Specifically, Respondents view Section 1182's language "return[ing] to the custody from which he was paroled" to mean that Petitioner reverts to his status when he was detained at the border under Section 1225(b)(2).  However, Section 1182 also states that, after Petitioner's parole ends, "his case shall continue to be dealt with in the same manner as that of any other applicant for admission."  And an applicant for admission who resides in the United States for years would—under the dominant interpretation inside and outside of this District—be detained under Section 1226(a).  See Rodriguez-Acurio v. Almodovar, No. 2:25-CV-6065, 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025) ("[Petitioner's] case, which necessarily includes the procedures required before detention, 'shall continue to be dealt with in the same manner as that of any other applicant for admission,' 8 U.S.C. § 1182(d)(5)(A), and any other applicant for admission residing in the United States for more than three years would be detained under Section 1226.")

3

Second, even if the Court were to find that Petitioner was subject to mandatory detention when his parole expired on April 18, 2025, Respondents waited over eight months to detain him again. Respondents' assertion that Petitioner's case resembles that of someone who recently crossed the border became more tenuous the longer Petitioner remained in the country after his parole expired. Instead, finding that Section 1226(a) applies to Petitioner would treat him "in the same manner as that of any other applicant for admission" who lived in the country for a similar amount of time, as Section 1182 requires. Ivonin, 2026 WL 199283, at *5 ("Once [petitioner's] parole expired and he remained in the United States, with no action by the government to remove him or otherwise take him into custody, the legal fiction treating him as at the threshold of entry no longer applied.")

As a result, Section 1226(a) governs Petitioner's detention. Because Section 1226(a) provides for a bond hearing and Petitioner has not received one, Petitioner has demonstrated that his continued detention violates his rights under that provision.

Accordingly, Petitioner is entitled to the procedural protections afforded by Section 1226(a)—namely, a bond hearing before an Immigration Judge. As such, the Court will order Respondents to provide Petitioner with a bond hearing under Section 1226(a) by March 16, 2026. If Respondents do not hold a bond hearing by March 16, 2026, Petitioner must be released from detention while he awaits that hearing.

For the foregoing reasons, the Court will grant Petitioner Edwin Matos Nunez's Petition for Writ of Habeas Corpus (Doc. No. 1). Because Petitioner's Motion for a Temporary Restraining Order (Doc. No. 2) relies on the same statutory claims alleged in his Petition, Petitioner's Motion for a Temporary Restraining Order (Doc. No. 2) will be denied as moot.

1) By March 16, 2026, Respondents must provide Petitioner with a bond hearing under 8 U.S.C. 1226(a), in which the parties will be allowed to present evidence and argument regarding whether Petitioner is a danger to the community and presents a flight risk if not detained.

2) If Respondents fail to hold a bond hearing by March 16, 2026, they must release Petitioner from detention while he awaits the bond hearing.

3) By March 20, 2026, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release.

BY THE COURT:

/s/ Joel H. Slomsky
_____
Joel H. Slomsky, J.

4